UNITED STATES of America, Appellee,

v.

Andrew Michael SMITH, Appellant.
(Two cases)

UNITED STATES of America, Appellee,

v.

Stanley Seymour PALMER, Appellant.

UNITED STATES of America, Appellee,

v.

James Edward CHRISTY, Appellant.

Nos. 82–5119 to 82–5122.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 14, 1983.

Decided April 5, 1983.

F.R.A.P. 4(b) (emphasis added).

V. Edward Jennings, Jr., Winston-Salem, N.C. (E. Raymond Alexander, Jr., Alexander, Moore & Baynes, Greensboro, N.C., on brief), for appellant Smith.

Kenneth Kyre, Jr., Greensboro, N.C. (Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, N.C., on brief), for appellant Christy.

William L. Cofer, Winston-Salem, N.C. (Cofer & Mitchell, Winston-Salem, N.C., on brief), for appellant Palmer.

David B. Smith, Asst. U.S. Atty., Greensboro, N.C. (Kenneth W. McAllister, U.S. Atty., Douglas Cannon, Asst. U.S. Atty., Greensboro, N.C., Caren W. Allen, Paralegal Specialist on brief), for appellee.

Before RUSSELL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Andrew Smith, Stanley Palmer, and James Christy were convicted by a jury of conducting an illegal gambling business in violation of 18 U.S.C. § 1955. Smith and Palmer also were convicted of using an

interstate facility (a telephone) in the promotion of a business enterprise involving gambling in violation of 18 U.S.C. § 1952(a)(3). In addition, Smith's probation was revoked on the basis of his convictions.[1]

We affirm Palmer's convictions. We reverse Smith's and Christy's convictions because the evidence was insufficient to sustain the jury's verdict. We also vacate and remand the revocation of Smith's probation.

■ Count I of the indictment charged Smith, Palmer, and Christy with violating 18·U.S.C. § 1955 by knowingly and willfully conducting, financing, and owning from August 5, 1979, through December 16, 1979, "part of an illegal gambling business involving bookmaking and accepting wagers on sporting events."[2] To prove a violation of § 1955, the government must establish three elements: (1) the existence of a gambling business which is illegal under the laws of the state in which it is conducted; (2) the involvement of five or more persons in the operation of the business; and (3) the substantially continuous operation of the business for a period in excess of 30 days or gross revenues of $2,000 in any single day.[3]

## I

■ Through the use of gambling records admitted in evidence against Palmer and the explanation of the records by an expert witness, the government proved every element of the offense to establish that Palmer violated § 1955. We find no merit therefore in Palmer's assertion that the evidence is insufficient to sustain the verdict of the jury on Count I. We also find that the evidence was sufficient to sustain Palmer's conviction on Count III for making interstate telephone calls in violation of 18 U.S.C. § 1952(a)(3) to carry on the gambling business.

■ Palmer's rights under the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, were not violated by his detention during the search of his premises. Officers searching a location have the authority to detain the occupants while a proper search is conducted. *Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981). When the officers left the premises after completing their search and seizing Palmer's records, he was no longer detained. He was not arrested until ten months later. The facts indicate the detention of Palmer during the search did not amount to an arrest that would invoke provisions of the Speedy Trial Act. *Cf. United States v. Timpani,* 665 F.2d 1 (1st Cir.1981).

We find no cause for reversal in his other assignments of error. The judgment against Palmer is affirmed.

## II

■ The only documents admitted against Christy were telephone toll records showing calls to and from Palmer's phone. An F.B.I. agent testified that Christy admitted running a small "poker-liquor" house and placing wagers in the fall of 1979 on football games for people, usually in the amount of $50–$100 several times a week.

The evidence against Christy, standing alone, was not sufficient to show he violated § 1955. The government sought to remedy this hiatus in its proof by linking him to Palmer's illegal gambling operation. It at-

---

1. This court previously reversed an order disqualifying Smith's attorney because of an alleged conflict of interest. *United States v. Smith,* 653 F.2d 126 (4th Cir.1981). The court also reversed an order of the district court suppressing evidence seized in the search of premises occupied by Palmer. *United States v. Palmer,* 667 F.2d 1118 (4th Cir.1981).

2. Six other persons—Stephenson Price, Harry Nash, Dewey Cross, Jeffrey Littleton, Lynn James, and Henry Loman—were indicted. Nash and Loman pled guilty before trial. Only James was acquitted. Price and Cross did not appeal their convictions. Littleton filed an appeal but voluntarily dismissed it under Fed.R. App.P. 42(b).

3. It is uncontested that a gambling business, if shown to exist by the government, is illegal under the laws of North Carolina. *See* N.C. Gen.Stat. § 14–292 (1981). The government has proceeded in this case solely on the theory that the gambling business had gross revenues of $2,000 in a single day.

tempted to do this by its expert's analysis of the records admitted against Palmer, which disclosed, in addition to the illegality of Palmer's operation, that Christy was a writer for Palmer.

The evidence against Smith consisted of parlay cards and a calculator tape obtained during a search of his residence. The government also introduced a photograph of his phone and his phone toll records, which disclosed calls to and from Palmer and numerous interstate calls to two businesses that furnished information about sporting events. Testimony established that Smith was acquainted with two codefendants, Price and Littleton, and that a bettor had placed a wager with Littleton over Smith's phone.

The evidence against Smith standing alone was insufficient to prove the elements necessary to show he violated § 1955. The government therefore sought to associate him with Palmer's gambling business. The essential link was Littleton, who was shown to be affiliated with Palmer. The government's expert testified that his analysis of records admitted against Littleton disclosed that Smith had a financial interest in Littleton's gambling activities. He did this by comparing the adding machine tape admitted against Smith with corresponding entries found in the records admitted against Littleton.

At the conclusion of the government's case, the prosecutor moved that all evidence admitted during the trial be admitted against each of the defendants. Counsel for Christy and Smith both objected to the government's motion. After the court expressed some doubt about the motion, the prosecutor withdrew it. The prosecutor then moved that the exhibits admitted against Palmer, which established the existence of an illegal gambling business, be admitted against Littleton. The court granted this motion. The court denied a motion to admit the Palmer and Littleton exhibits against Smith, but it observed that the connection between Littleton and Smith had been sufficiently explained by the expert's analysis of the Littleton and Smith exhibits. The court subsequently denied the defendants' motions for judgment of acquittal.

The court's instructions to the jury were consistent with the prosecutor's withdrawal of his motion that all evidence be admitted against each of the defendants and with the court's denial of the motion to admit the Palmer and Littleton exhibits against Smith. Although the court told the jury that they could consider all of the exhibits, it specifically cautioned: "You must determine the guilt or innocence of each defendant as to each separate offense charged by giving separate consideration to the evidence which applies to him as to each count."

Christy and Smith contend that the Palmer records, which disclosed the existence of an illegal gambling business, were hearsay with respect to them. Smith makes the same contention about the Littleton records. They point out that in the absence of proof otherwise associating them with Palmer's gambling business, this hearsay was inadmissible against them. The trial court and the prosecutor seemingly recognized the validity of these contentions, for in the final analysis the incriminating Palmer and Littleton records were not admitted against them.

We conclude that Christy's and Smith's positions are sound. The evidence disclosed by the Palmer records were indispensible to linking Christy to Palmer's illegal business, and the Littleton records were indispensible to show the link with Smith. Proof that Christy and Smith phoned Palmer or that Palmer phoned them is not enough to establish the connection, for only by analysis of the excluded records can it be surmised that the phone calls were incriminating. Palmer's and Littleton's records were no more than their declarations made in the absence of Christy and Smith. The expert simply deciphered these hearsay declarations to explain how they referred to Christy and Smith. Without proof independent of the Palmer and Littleton records, the association of Christy and Smith in Palmer's illegal business cannot be shown. As *Glasser v.*

*United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), cautions: "Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence."

The government seeks to avoid the precept of *Glasser* by relying on the opinion of its expert whose analysis of the Palmer and Littleton records provided the basis for his opinion that Christy and Smith were associated in the illegal gambling business. The government points out that Christy did not object to the expert's testimony and Smith made only a general objection.

We cannot accept the government's position. When the expert testified about the Palmer records, the records had been admitted only against Palmer. When he testified about the Littleton records, they had been admitted only against Littleton. His testimony was germane to the case against Palmer and Littleton, for it was incumbent on the government to prove the nature of the gambling business Palmer and Littleton conducted to establish the elements of § 1955. We cannot fault counsel for Christy and Smith for assuming that testimony about exhibits that had never been admitted against them pertained only to their codefendants against whom the exhibits had been admitted. Moreover, they did object when the government subsequently moved that "all of the evidence admitted during this trial be admitted as to each of the defendants." This, of course, included the expert's testimony and the exhibits on which he relied. After the court expressed some hesitancy about granting the motion, the prosecutor said: "Your honor, the government will withdraw its motion to offer the evidence previously stated . . . ."

We therefore conclude the evidence was insufficient to establish that Christy and Smith violated § 1955, and their convictions must be reversed. We direct the district court on remand to dismiss the charges set forth against them in Count I of the indictment. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

## III

Smith was convicted under Count VII of violating the Travel Act, 18 U.S.C. § 1952(a)(3), which proscribes the use of interstate telephone facilities to promote or carry on a business enterprise involving gambling in violation of the laws of the state where the business is conducted. The "business enterprise involving gambling" to which reference is made in § 1952 need not be as extensive as the "illegal gambling business" defined in § 1955. Nevertheless, to prove Smith violated § 1952, the government was required to show that he made interstate phone calls to promote or carry on a "business enterprise involving gambling."

To prove Smith's guilt, the government relied on the Palmer and Littleton exhibits to show that he was associated with them in an illegal gambling business. The government's proof showed no other business enterprise involving gambling. The insufficiency of the evidence to link Smith to Palmer and Littleton therefore requires reversal of Smith's conviction for violating § 1952(a)(3).

We therefore reverse the judgment of Smith's conviction for violating § 1952 and remand for dismissal of Count VII. The record discloses that Smith's probation was revoked because of his convictions, which we have now set aside. Accordingly, we vacate the order of revocation, without prejudice, however, to the government's right to show, if it can, any other violation of the terms of his probation.

No. 82–5119 (Smith-probation revocation), VACATED AND REMANDED;

No. 82–5120 (Palmer-Counts I and III), AFFIRMED;

No. 82–5121 (Christy-Count I), REVERSED AND REMANDED;

No. 82–5122 (Smith-Counts I and VII), REVERSED AND REMANDED.