Larry C. HICKS, Director–Trustee for 3011 Corp., L.R. News, Inc. t/a Edgewood Books, joseph J. Lavodie, Patricia A. Fulton, Paul Edward Koenig, Patricia Ann McGinnis, William L. Palmer, Jr., and Edward E. Cage

v.

Joseph I. CASSILLY, Individually and as States Attorney, Harford County, Maryland, M. Teresa Garland, Individually and as Assistant States Attorney, Harford County, Maryland, Robert E. Comes, in his official capacity as Sheriff for Harford County, Dominic J. Mele, Individually Jesse Bane, J.R. Taylor, Thomas Golding, Roy Mitchell, Michael Barlow, Fred Sherron, James Stonesifer, James M. Harkins, Edward Hopkins, Edward Keck, and James Way, Individually and as Deputy Sheriffs, Harford County, Maryland.

Civil No. B–89–2231.

United States District Court,
D. Maryland.

July 24, 1997.

WALTER E. BLACK, Jr., Senior District Judge.

Presently pending before the Court are three summary judgment motions: (1) a Motion for Summary Judgment filed on behalf of defendants Dominick J. Mele, former Sheriff of Harford County, and Captain Jesse Bane, Captain James Stonesifer, Deputy Thomas Golding, Deputy J. Randy Taylor, Deputy Roy Mitchell, Deputy Michael Barlow, Deputy Fred Sherron, Deputy James Harkins, Deputy Edward Hopkins, Deputy Edward Keck, and Deputy James Way (collectively "Sheriff's Office defendants"), all sued individually and in their official capacities; (2) a Motion for Summary Judgment filed on behalf of defendants Joseph I. Cassilly, the Harford County State's Attorney, and M. Teresa Garland, a Harford County Assistant State's Attorney (collectively "State's Attorney defendants"), both sued individually and in their official capacities; and (3) a Motion for Partial Summary Judgment filed on behalf of plaintiffs 3011 Corp., trading as U.S. Books ("U.S. Books"),[1] L.R. News, Inc., trading as Edgewood Books ("Edgewood Books"), Joseph J. LaVodie, Patricia A. Fulton, Paul Edward Koenig, Patricia Ann McGinnis, William L. Palmer, Jr., and Edward E. Cage.[2] The issues raised by the motions have been briefed and the Court has had the benefit of oral argument at hearings held on November 3, 1995 and on November 30, 1995.

This case arises out of the execution by state law enforcement authorities of search and seizure warrants against U.S. Books and Edgewood Books, based upon a finding of probable cause that the stores were violating state obscenity laws. The two searches, both of which took place on June 13, 1989, resulted in the seizure of approximately 1,130 items from U.S. Books, and of approximately 765 items from Edgewood Books.

All three summary judgment motions were filed on April 7, 1995. Both sets of defendants maintain that they are entitled to qual-

William E. Seekford, Towson, MD, for plaintiffs.

Andrew H. Baida, Office of Attorney General, Baltimore, MD, for State's Attorney defendants.

Jefferson L. Blomquist, Diane T. Swint, Office of County Attorney, Bel Air, MD, for Sheriff's Office defendants.

---

1. During this litigation, plaintiff 3011 Corp. t/a "U.S. Books" had its charter forfeited by the State of Maryland and by Order of Court entered July 29, 1994, Larry C. Hicks, Director–Trustee for 3011 Corp. was substituted as a party plaintiff therefor.

2. Plaintiff William Ensor's claims were dismissed by the Court at oral argument on November 3, 1995, for failure to respond to discovery requests.

ified immunity with respect to the claims in this case, and thus that summary judgment is appropriate. Opposing the motions, plaintiffs assert that qualified immunity is inappropriate on the grounds that the rights alleged to have been violated are clearly established, and that defendants' actions in violating those rights were not reasonable.

## I. *Facts*

In November of 1988, the Harford County Sheriff's Office and State's Attorney's Office initiated an investigation into possible violations of Maryland obscenity laws at U.S. Books and Edgewood Books. The investigation was directed by State's Attorney Cassilly at the State's Attorney's Office, and by Deputy Taylor at the Sheriff's Office. During the course of the investigation, Cassilly and Taylor met several times to discuss how to establish probable cause for search and seizure warrants for the bookstores.

In civilian clothes, Taylor visited U.S. Books and Edgewood Books. He observed how materials were displayed at the stores, and purchased two magazines from each store. After gathering this evidence, Taylor prepared applications and affidavits for search and seizure warrants for the two bookstores, and submitted them to Cassilly for his review and approval. Upon receiving Cassilly's approval, Taylor submitted the applications and affidavits to Harford County Circuit Court Judge Cypert O. Whitfill on June 9, 1989.

The warrant applications described and included photocopies of the covers from the magazines Taylor purchased from each store. Each warrant stated that there was "probable cause to believe that there is now being displayed for advertising purposes ... books, magazines, photographs, films and posters which depict sadomasochistic abuse, sexual conduct, and sexual excitement" on the subject bookstore's premises, in violation of Maryland Annotated Code, Article 27, § 416D.

Moreover, the language in each warrant tracked the language in the statute, authorizing the seizure of "all books, magazines, photographs, films, posters, and other items or materials, that are displayed for advertising purposes that depict sadomasochistic abuse, sexual conduct, or sexual excitement."

Therefore, the warrants apparently vested within the executing officers the authority to determine which materials were obscene, and thus properly seizable, under the statute as interpreted in *Smiley v. State,* 294 Md. 461, 450 A.2d 909 (1982) (upholding the constitutionality of Section 416D by reading into it a requirement that materials within its scope fall under the Supreme Court's definition of obscenity). The warrants also authorized the seizure of "all correspondence, and records of any kind, reflecting the ordering, receipt, shipping, and payment for" the items that allegedly violated § 416D.

On the morning of June 13, 1989, the day the warrants were to be executed, Cassilly, Taylor, and Assistant State's Attorney Garland briefed the deputies who were part of the warrant execution teams as to the procedure for the searches and the scope of the search and seizure warrants. During execution of the warrants, the various individual plaintiffs were detained, asked for identification, and subjected to "pat down" searches, the severity of which is in some dispute. Also, plaintiffs claim that the searches were videotaped by federal agents at the scene, as well as by local media invited by the defendants in this action.

Garland staffed a command post at U.S. Books throughout the search to answer any questions by the deputies about whether an item should be seized. Pursuant to the warrants, the law enforcement officials seized approximately 1,130 items from U.S. Books, and approximately 765 items from Edgewood Books.

The two stores, along with seven other individual plaintiffs comprised of store employees, a janitor and handyman at U.S. Books, and private customers present during execution of the warrant at U.S. Books, filed suit against three distinct categories of defendants. The first included all of the state law enforcement officials who participated in obtaining and executing the warrants. The second category included two Federal Bureau of Investigations Agents and a United States Postal Inspector, all of whom were invited to the searches to investigate possible violations of federal laws. The third catego-

ry included John Philip, Inc., the landlord of U.S. Books, and Raymond Astor, a private individual whom plaintiffs claim participated in the overall conspiracy to deprive plaintiffs of their constitutional rights. Plaintiffs have dismissed their claims against the second and third categories of defendants. Consequently, only the first category of defendants remains in the case.

Counts One through Six of the complaint seek monetary relief for rights violations[3] on a variety of legal theories, including obtention and execution of an unconstitutional search warrant (Count One); unconstitutional search and seizure of the individual plaintiffs without warrant or probable cause (Count Two); unlawful detention, false arrest, and false imprisonment of the individual plaintiffs without a warrant or probable cause (Count Three); assault and battery of the individual plaintiffs (Count Four); unconstitutional prior restraint of plaintiffs' First Amendment rights (Count Five); and violation of plaintiffs' constitutional right to privacy (Count Six). The plaintiffs also seek a judgment declaring unconstitutional the State criminal statutes underlying the searches and seizures and the procedures followed by the defendants herein, and injunctive relief (1) requiring the return of materials seized, (2) enjoining all criminal prosecutions based on the searches and seizures, and (3) preventing the future use of the criminal statutes that are the subject of the declaratory judgment request.

On March 23, 1990, this Court granted in part and denied in part defendants' Motion to Dismiss or for a Stay, which was based upon federal abstention principles. The Court held that abstention was inappropriate as to plaintiff bookstores' claims for injunctive and declaratory relief touching on the alleged mass seizure of materials without a prior adversarial hearing, as to the individual plaintiffs' claims for declaratory and injunctive relief, and as to all plaintiffs' claims for damages. However, the Court stayed all of these claims pending resolution of the ongoing criminal and civil proceedings before the courts of Harford County. The Court also granted defendants' motion to the extent it sought abstention and dismissal of the bookstores' remaining claims for declaratory and injunctive relief.

In July of 1994, upon conclusion of the state proceedings, the Court lifted the stay. Subsequently, the Court entered an order scheduling discovery and the filing of summary judgment motions.

## II. Summary Judgment and Qualified Immunity Standards

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment can only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186–87, 111 L.Ed.2d 695 (1990). Summary judgment is not appropriate unless, viewing the possible inferences in a light most favorable to the non-moving party, no reasonable jury could return a verdict in its favor. *Helm v. Western Maryland Ry. Co.,* 838 F.2d 729, 734 (4th Cir.1988); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. It should also be noted that in the Fourth Circuit the standard for summary judgment is strict, and that summary judgment is inappropriate even if merely the inferences to be drawn from the facts are in dispute. *Morrison v. Nissan Motor Co., Ltd.,* 601 F.2d 139, 141 (4th Cir.1979); *Pulliam Inv. Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

Nonetheless, when a motion for summary judgment has been made and supported, Rule 56(e) provides that an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. The mere existence of a scintilla of evidence is insufficient.

---

**3.** The federal claims asserted in the Complaint are based on 42 U.S.C. § 1983, the plaintiffs having abandoned their claims under 42 U.S.C. § 1985.

Rather, there must be evidence from which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511–12. In the absence of such a minimal showing, the moving party should not be required to undergo the considerable expense of preparing for and participating in a trial.

In any event, however, a trial court may deny summary judgment "in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Such an approach harmonizes well with the court's duty to exercise caution in resolving motions for summary judgment.

Defendants argue that as government officials, the doctrine of qualified immunity protects them from damage liability in this case, and that such immunity mandates that the Court grant them summary judgment.

The doctrine of qualified immunity applies to actions brought under 42 U.S.C. § 1983. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 n. 30, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Stated another way, qualified immunity will protect government officials exercising discretionary functions from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

The Supreme Court has defined "clearly established law" to require that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. "In short, officials cannot be held to have violated rights of which they could not have known." *Pinder v. Johnson,* 54 F.3d 1169,

1173 (4th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 530, 133 L.Ed.2d 436 (1995) (citing *Gooden v. Howard County, Md.,* 954 F.2d 960, 968 (4th Cir.1992) (en banc)).

The Fourth Circuit has summarized the analysis for resolving qualified immunity issues as follows:

> Ruling on a defense of qualified immunity.. requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right. The first two of these present pure questions of law for the courts. The third, which involves application of Harlow's objective test to the particular conduct at issue, may require factual determinations respecting disputed aspects of that conduct.

*Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992) (citations omitted). Indeed, despite the urging by the Supreme Court that qualified immunity issues be resolved at the summary judgment stage, the Fourth Circuit has noted that "[i]f there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial." *Id.* at 313.

### III. *Mele and Bane*

■ As an initial matter, the Court finds that summary judgment is appropriate in favor of Captain Bane and Sheriff Mele[4] on all counts, because a claim under 42 U.S.C. § 1983 cannot be predicated on the doctrine of *respondeat superior, City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 922–23, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1986), and because there is no evidence that these officers either participated in the procurement of the warrants at issue here or assist-

---

**4.** Summary judgment is also appropriate for the current Sheriff for Harford County, Robert E.

Comes, in his official capacity.

ed in the execution of those warrants. The Court will consider each count separately in assessing the potential liability of the remaining defendants.

## IV. *Warrants*

At issue in Count One is the constitutionality of the warrant applications.[5] Plaintiffs allege that the warrants were deficient for several reasons, including, *inter alia*, that they permitted the officers to seize "all" books on display that met the requirements of § 416D, without regard to the Supreme Court dictates concerning prior restraint. In opposition, defendants maintain that they were entitled to rely on Judge Whitfill's finding that the search and seizure warrants were supported by probable cause.

■ As an initial matter, the Court notes that Taylor was the only Sheriff's Office defendant to have any role in procuring the search and seizure warrants that were executed at U.S. Books and Edgewood Books. Moreover, while Cassilly headed up the investigation at the State's Attorney's Office, meeting with Taylor several times and reviewing the warrant applications and affidavits before they were submitted to Judge Whitfill, little evidence has been presented linking Assistant State's Attorney Garland to the procurement of the search and seizure warrants.[6] Accordingly, summary judgment is appropriate on this count in favor of all Sheriff's Office defendants other than Taylor, and in favor of Garland.

■ In determining whether defendants Taylor and Cassilly have qualified immunity on this count, the Court must first decide whether the right allegedly breached by defendants—the right not to be subject to an unconstitutional prior restraint—is clearly established. The Supreme Court has considered the constitutionality of prior restraints of potentially obscene material in a series of cases beginning with *Marcus v. Search Warrants of Property at 104 East Tenth St., Kansas City, Mo.*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

In *Marcus*, and also in *A Quantity of Copies of Books v. Kansas*, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) (hereinafter *"Books"*), the Court considered the constitutionality of seizures of numerous copies of selected books without prior adversary hearings.[7] The Court in both cases invalidated these seizures as violative of the First and Fourteenth Amendments to the Constitution. *Marcus*, 367 U.S. at 738, 81 S.Ct. at 1719–20; *Books*, 378 U.S. at 213, 84 S.Ct. at 1727.

In *Books*, the Court noted that "[s]tate regulation of obscenity must 'conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line.'" *Id.* at 210, 84 S.Ct. at 1726 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963)). Accordingly, the Court concluded that pretrial seizures of First Amendment materials would only be upheld pursuant to a "procedure 'designed to focus searchingly on the question of obscenity.'" 378 U.S. at 210, 84 S.Ct. at 1726 (quoting *Marcus*, 367 U.S. at 732, 81 S.Ct. at 1716–17).

Moreover, the *Books* court found that the constitutional deficiency could not be cured by an adversary hearing held after the seizure, stating: "[I]f seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books." 378 U.S.

---

5. Although plaintiffs assert that Count One also applies to the constitutionality of the execution of the search and seizure warrant, the Court finds that this allegation is sufficiently addressed by Count Five of the complaint.

6. There has been evidence that Cassilly showed Garland the warrant applications before they were submitted to Judge Whitfill. However, plaintiffs have failed to present evidence linking Garland in any substantive way to the acquisition of the warrants. Moreover, Garland stated in an affidavit that she "did not participate in any manner in the preparation of any of [the warrant applications]." Evidence that she saw the applications, without more, cannot justify holding her liable on this count.

7. The police in *Books* had seized 1,715 copies of 31 novels. 378 U.S. at 208, 84 S.Ct. at 1724–25. *Marcus* involved seizure of 11,000 copies of 280 publications. 367 U.S. at 723, 81 S.Ct. at 1711–12.

at 213, 84 S.Ct. at 1727. *See also Greenmount Sales, Inc. v. Davila,* 479 F.2d 591, 594 (4th Cir.1973) (interpreting *Books* to mean that " 'absent an adversary hearing a substantial threat existed that the right of non-obscene publications to unobstructed circulation would be impinged through *massive* seizures of material deemed obscene solely on the basis of an *ex parte* hearing' ") (quoting *United States v. Alexander,* 428 F.2d 1169, 1172 (8th Cir.1970)) (emphasis added by *Greenmount* court).

The Court fine-tuned this standard in *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), a case involving the exhibition of a sexually explicit film. The *Heller* court noted that "seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding." *Id.* at 492, 93 S.Ct. at 2794. Accordingly, the Court concluded that seizure of a single copy of a film for evidentiary purposes based on a finding of probable cause was constitutionally valid, but that "[c]ourts will scrutinize any large-scale seizure of books, films, or other materials presumptively protected under the First Amendment to be certain that the requirements of ... *Books* and *Marcus* are fully met." *Id.* at 491, 93 S.Ct. at 2794. The Court finds that *Marcus* and its progeny clearly establish the right to an adversarial hearing prior to a mass seizure.

The Court must next consider whether, in light of this clearly established law, defendants Taylor and Cassilly acted reasonably in submitting warrant applications that requested seizure of "all" items that allegedly violated § 416D. Defendants maintain that it was reasonable for them to rely on Judge Whitfill's determination that probable cause existed in issuing the warrant. However, Supreme Court case law leads the Court to a different conclusion.

In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), a police officer argued that he was entitled to rely on a judicial officer's determination that probable cause existed. The Supreme Court rejected this assertion, holding that the appropriate inquiry was "whether a reasonably well-trained officer in [this officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* at 345, 106 S.Ct. at 1098. The Court continued:

> If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.

*Id.* at 345–46, 106 S.Ct. at 1098–99. In a footnote, the Court also noted that "where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." *Id.* at 346 n. 9, 106 S.Ct. at 1098 n. 9. Nevertheless, "it is different if no officer of reasonable competence would have requested the warrant." *Id.*

*Malley* makes clear that Judge Whitfill's issuance of the warrant does not, in and of itself, shield defendants from liability. While obtention of a warrant may provide the officer some protection from suit under 42 U.S.C. § 1983, *see Torchinsky v. Siwinski,* 942 F.2d 257, 262 (4th Cir.1991), there is no per se rule of immunity based upon the issuance of a warrant. Rather, where a clearly established right is involved, a finding of qualified immunity depends on whether defendants' actions were reasonable. Being highly fact specific, this determination is properly reserved for trial. *See Pritchett v. Alford,* 973 F.2d at 312. Additionally, because liability on this count rises or falls with the reasonableness of defendants' conduct, the Court finds that, in this case, "the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).[8]

■ Finally, the Court must determine which plaintiffs have demonstrated an actionable claim under Count One. At the hearing held on November 30, 1995, plaintiffs' counsel argued that all plaintiffs have suffered an actionable injury under Count One in that each has had his constitutional right to disseminate or to receive first amendment materials infringed by defendants' conduct. Finding no factual or legal basis for the individual plaintiffs' claims under Count One, the Court will grant all defendants' summary judgment motions on Count One with respect to the claims of the individual plaintiffs. In summary, defendants motions for summary judgment will be denied with respect to plaintiff bookstores' claims against defendants Taylor and Cassilly, and will be granted in all other respects.

## V. *Prior Restraint*

■ Count Five of the complaint alleges an unconstitutional prior restraint. As with Count One, the corporate plaintiffs are the only plaintiffs to have actionable claims on this count. · Accordingly, with respect to the individual plaintiffs, summary judgment is granted in favor of all defendants. Moreover, as discussed above, the law is clear that a mass seizure without a prior adversarial hearing violates a plaintiff's constitutional rights. Nevertheless, defendants are entitled to qualified immunity on this count if their conduct in seizing the items at U.S. Books and Edgewood Books was reasonable.

■ To a large extent, the reasonableness of defendants actions rests on whether the seizures at U.S. Books and Edgewood Books clearly amount to mass seizures warranting protection under *Marcus* and its progeny. The seizure at U.S. Books consisted of approximately 1130 items, including 332 magazines which were taken from behind the counter. At Edgewood Books, the law enforcement officials seized approximately 765 items. Multiple copies of some magazines

were seized at each store. On their face, these seizures appear to be mass seizures.

Defendants nevertheless maintain that these seizures do not clearly warrant protection under *Marcus*. In support of this argument, defendants note (1) that not all items in the bookstores were seized; (2) that subsequent to the seizure, the state returned all items to the bookstores other than the items they needed for evidence; and (3) that the books that were retained were subsequently determined to be obscene.

None of these factors dissuade the Court from determining that a trier of fact could find that the seizures at U.S. Books and Edgewood Books were mass seizures. For purposes of prior restraint analysis, it is irrelevant that many of the seized items were subsequently returned or that some of the seized items were later found to be obscene. Further, in evaluating whether a seizure constitutes a "mass seizure," it is irrelevant whether all items at the store are seized. It is sufficient that a large quantity of items, including multiple copies of some of the items, be seized.

Defendants also assert that, because this is a civil case, plaintiffs have the burden of showing that they engaged in speech that is protected by the First Amendment, and that plaintiffs cannot meet this burden because a jury found some of the seized items to be obscene. However, defendants cite no authority for this proposition. Additionally, this claim misses the mark. With regard to prior restraint, it is irrelevant that items are later found to be obscene. The relevant question is whether there was an adversarial hearing as to obscenity before the possibly obscene items were seized.

■ Defendants further maintain that their conduct was reasonable because the seizures were made pursuant to a warrant. On the specific issue of the execution of a search warrant, the Fourth Circuit has stated as follows:

---

8. Plaintiffs also maintain that the warrants were deficient because they did not require that the enumerated materials be obscene, and thus did not leave the determination of obscenity to a neutral and detached judicial officer. Because the Court will deny summary judgment on this count as to defendants Taylor and Cassilly, the Court does not reach this argument.

It is undisputed on the record that defendant. participated only in the execution of the search warrant.... The trial court found that because the search was conducted pursuant to a valid warrant, the officers were entitled to immunity from any claim arising out of this search based upon the objective reasonableness of their conduct.... Because [defendant] is alleged to have participated only in this search, there is certainly no genuine issue as to whether he violated clearly established law.

*Turner v. Dammon,* 848 F.2d 440, 447 (4th Cir.1988) (citations omitted).

Other courts considering this issue have reached the same conclusion. For example, in *Hall v. Lopez,* 823 F.Supp. 857 (D.Colo. 1993), the District of Colorado determined that "when we examine the reasonableness of an officer's actions when the officer executes a search warrant secured by another officer, the standard becomes one of good faith." *Id.* at 861. The Hall court distinguished *Malley* by noting that "[i]n *Malley,* the officer who executed the search warrant was also the officer who applied for it. He was aware of the facts underlying the warrant and could not claim reliance on its valid procurement by another. The Supreme Court therefore was not called upon to address the fellow officer rule." *Id.* at 861 n. 2. *See also Morris v. County of Tehama,* 795 F.2d 791, 795 (9th Cir.1986) (" [F]or purposes of section 1983 immunity, an officer is entitled to assume the validity of a *search* warrant secured by fellow officers.") (emphasis in original)

These cases persuade the Court to consider the potential liability of Taylor, Cassilly, and Garland separately from that of the remaining defendants who participated in the execution of the search warrant. It is clear that Taylor and Cassilly, as the officials who procured the warrant, are not sheltered by the existence of the warrant. Accordingly, summary judgment will be denied on this count as to them. It is also clear under *Turner* that the officers who were involved only in the execution of the warrants could reasonably rely on the validity of the warrants. Thus, defendants Stonesifer, Golding, Mitchell, Barlow, Sherron, Harkins, Hopkins,

Keck, and Way are entitled to summary judgment on this count.

■ Assessing Garland's potential liability on this count is more difficult. Although she did not participate in the procurement of the warrants, she was involved in planning the execution of the warrants and assisted in briefing the officers about what they could seize under the warrants. Additionally, she had a supervisory role in the execution of the warrants. She staffed a command post at U.S. Books, advised the officers about whether specific items could be seized, and spoke to members of the press on the premises. Moreover, as an attorney, Garland is charged with greater knowledge of the law than are law enforcement officers. Indeed, the Court is unaware of any holding comparable to Turner that adjudges it reasonable as a matter of law for an attorney who is substantially involved in the execution of a warrant to rely on the validity of the warrant without making an independent determination that the seizure is constitutional. For the above reasons, the Court finds that summary judgment is not appropriate on this count as to Garland.

## VI. *Seizure of Individual Plaintiffs*

As to the individual plaintiffs' claims in Count Three that they were unconstitutionally seized during the execution of the warrants, defendants assert that immunity is proper because plaintiffs, as individuals found on the premises, did not have a clearly established right to be free from detention during the execution of the search and seizure warrants.

■ As a general rule, law enforcement officials must have probable cause before seizing a person, even if the seizure does not amount to a formal arrest. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The Supreme Court, however, has made several exceptions to this rule. One such exception was set out in *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). There, the Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to

detain the occupants of the premises while a proper search is conducted." *Id.* at 705, 101 S.Ct. at 2595.

While the *Summers* court expressly refrained from deciding "whether the same result would be justified if the search warrant merely authorized a search for evidence[,]" *id.* at 705 n. 20, 101 S.Ct. at 2595 n. 20, this issue has been implicitly settled by the Fourth Circuit in *United States v. Smith,* 704 F.2d 723 (4th Cir.), *cert. denied sub nom. Palmer v. United States,* 464 U.S. 817, 104 S.Ct. 76, 78 L.Ed.2d 88 (1983). In *Smith,* the Fourth Circuit considered whether officers had the right to detain a suspected gambler on his premises as they searched for his gambling records. Without analysis, the court held that the officers could detain the occupants while a proper search was conducted, and cited *Summers* as authority for that holding. *Id.* at 725. *See also Daniel v. Taylor,* 808 F.2d 1401, 1405 (11th Cir.1986) (holding that law enforcement officers who detained the plaintiff for two hours and forty-five minutes while searching for evidence at her business were entitled to qualified immunity because no clearly established constitutional rights were violated).

█ *Summers* and *Smith* can be distinguished from the present case, as the search and resulting detention in both *Summers* and *Smith* stemmed from probable cause which focused suspicion on the very individuals who were detained. Thus, in those cases, there was a reasonable, particularized suspicion that the person being detained had committed a criminal act. Such particularized suspicion was a factor considered by the Court in *Summers* to justify the detention of individuals on something less than probable cause. The *Summers* court stated that "[i]f the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require *that citizen* to remain." 452 U.S. at 704–05, 101 S.Ct. at 2595, (emphasis added).

With respect to the employees at the two book stores, such particularized suspicion probably existed, particularly in light of Md. Ann. Code art. 27 § 416F (1992), which causes any employee found on the premises during a violation of § 416D to be guilty of violating § 416D. Such particularized suspicion is absent, however, with respect to plaintiff Palmer, a customer at U.S. Books. Nevertheless, the existence of individualized suspicion in *Summers* was merely one factor to be considered in determining the constitutionality of the detention. Consequently, its absence would not clearly establish that the detention was unconstitutional. Indeed, the *Smith* court, in finding detention to be proper, made no mention of the factors considered by the *Summers* court, but rather stated in broad terms its conclusion that detention was proper.

Given this legal context, it is certainly arguable that the officers in the instant case had the authority to detain all of the plaintiffs for the duration of the search. However, the Court need not resolve that issue today. It is enough to recognize that the law is unclear as to when it is impermissible to detain an occupant of a premises pursuant to a lawful search of that premises. The unsettled character of this legal issue is apparent, and demonstrates that the detention did not result in the violation of a clearly established right. Accordingly, all defendants are entitled to qualified immunity from liability on this count.

## VII. *Search of Individual Plaintiffs*

█ The Court reaches a different result with respect to the individual plaintiffs' claims in Count Two that they were unconstitutionally searched during the execution of the search and seizure warrants. In *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Supreme Court considered whether a search warrant authorizing the search of a tavern and its bartender for contraband also implicitly authorized the search of a customer at the tavern. The Court found that it did not, holding that because the police lacked a reasonable belief that the patron was involved in any criminal activity or that the patron was armed or dangerous, the search violated his rights under the Fourth and Fourteenth Amendments. *Id.* at 92–96, 100 S.Ct. at 342–45. In so holding, the Court explicitly rejected the defendant's position that the frisk of the

customer constituted a reasonable search for weapons under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Id.* at 93, 100 S.Ct. at 343. Rather, the Court noted that "[t]he 'narrow scope' of the *Terry* exception does not permit a frisk ... on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." *Ybarra*, 444 U.S. at 94, 100 S.Ct. at 343.

The effect of *Ybarra* on the availability of qualified immunity has been addressed in a few cases. In *James by James v. Sadler*, 909 F.2d 834 (5th Cir.1990), the Fifth Circuit considered whether the qualified immunity doctrine protected police defendants who had conducted a pat-down search of a customer at a beauty salon. The court held that "[t]he right to be free from an unreasonable pat-down search is a constitutional right sufficiently contoured to remove the defendant's actions from the protection of the immunity doctrine." *Id.* at 838. Accordingly, the court found that the district court's grant of summary judgment in favor of defendants was improper as to this charge. *See also Patrykus v. Gomilla*, 1988 WL 87045, *4 (N.D.Ill.) (finding that *Ybarra* doctrine is clearly established and, therefore, that qualified immunity does not shield police defendants who conducted a pat-down search of customers at a bar); *Johns v. Deleonardis*, 1994 WL 323164, *7 (N.D.Ill.) (citing *Ybarra* in determining that "qualified immunity is unlikely to shield the Defendants from liability").

Defendants in the instant case assert that the holding in *Ybarra* does not amount to clearly established law. In support of this contention, defendants again rely on *Michigan v. Summers*. However, *Summers* is not persuasive here because the Summers court expressly distinguished its holding from that in *Ybarra*:

> The "seizure" issue in this case should not be confused with the "search" issue presented in *Ybarra* .... In this case, only

the detention is at issue. The police knew respondent lived in the house, and they did not search him until after they had probable cause to arrest and had done so.

452 U.S. at 695 n. 4, 101 S.Ct. at 2590 n. 4.

A 1990 Supreme Court case reaffirmed the Supreme Court's dedication to *Ybarra*. In *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the Court held that the reasonable suspicion standard applies to protective sweeps. *Id.* at 334, 110 S.Ct. at 1100. Finding *Ybarra* to be a more analogous case than *Summers*, the Court pronounced that "the reasonable suspicion standard ... strikes the proper balance between officer safety and citizen privacy." *Id.* at 334 n. 2, 110 S.Ct. at 1098 n. 2. It is also notable that no Fourth Circuit case has called into question the holding of *Ybarra*. The Court finds that the right not to be searched in the absence of a reasonable, particularized suspicion, as delineated in *Ybarra* and its progeny, is clearly established.

Defendants cite Second Circuit and District of Connecticut cases in an attempt to show that the condition of the law is unclear. *See Rivera v. United States*, 928 F.2d 592, 606 (2nd Cir.1991); *Collier v. Locicero*, 820 F.Supp. 673, 678 (D.Conn.1993). However, these cases do not have precedential effect in this district, and thus do not diminish the Supreme Court's holdings in *Ybarra* and *Buie*.[9]

In applying these clearly established legal principles to the facts in this case, it is necessary to consider separately the allegations of each plaintiff. McGinnis, who was a sales clerk at Edgewood Books, testified at deposition that she was never searched during the execution of the search and seizure warrant at Edgewood Books. She also testified that she gave permission to the officers to search her pocketbook. Consequently, McGinnis's claim of an unconstitutional search cannot withstand summary judgment. Because McGinnis was the only plaintiff present at Edgewood Books when the search and seizure warrant was executed there,

---

9. Defendants also assert that summary judgment is appropriate on this count because plaintiffs have not demonstrated that the officers who patted them down were from the sheriff's office.

The Court does not find merit in this argument. Plaintiffs' inability to identify the specific officers who patted them down is likely a failure of the discovery process that may be cured at trial.

summary judgment on this count is properly granted in favor of defendants Harkins, Hopkins, Keck, and Way.

■ Other than McGinnis, all of the individual plaintiffs were at U.S. Books when the search and seizure warrants were executed. Fulton, who was working as a sales clerk at the time, was not patted down or physically touched by any officer. Her pocketbook and tote bag were searched by a deputy. However, a provision in the warrant required seizure of "all correspondence, and records of any kind, reflecting the ordering, receipt, shipping, and payment for" the items that allegedly violated § 416D. Because such correspondence could possibly be found in Fulton's pocketbook and tote bag, a search of those items was justified under the warrant, and cannot amount to a constitutional violation.

■ The remaining individual plaintiffs—Lavodie, Cage, Koenig, and Palmer—allege that they were patted down at least two times by the officers. LaVodie was the manager of U.S. Books and Edgewood Books; Cage was a handyman who was repairing an air conditioner and a sign when the officers arrived; and Koenig was engaged in janitorial services at U.S. Books. All three of these men were outside in the rear parking lot at U.S. Books when the officers entered the store. While securing the building, a few deputies came out, patted these men down, and directed them into the store. Once inside, the men were patted down again by other deputies. Palmer, a customer, claims that he was patted down three times and that the third pat down was conducted solely for the purpose of allowing the news media to get a picture of an officer patting someone down at U.S. Books. Palmer also alleges that the officer who orchestrated the first pat down put his hands in Palmer's pockets and took a shirt out of Palmer's hand.

Defendants have failed to produce evidence that the officers had a reasonable suspicion that any of these men were in possession of a weapon or other contraband. Accordingly, the allegations of LaVodie, Cage, Koenig, and Palmer are sufficient to survive the summary judgment motion made by the Sheriff's Office defendants who

executed the warrant at U.S. Books—namely, Taylor, Golding, Mitchell, Barlow, and Sherron. Summary judgment is appropriate, however, as to Captain Stonesifer, as he was not present when the U.S. Books premises were secured. Summary judgment will also be granted in favor of the State's Attorney defendants on this count because the evidence does not establish that these defendants were involved in the allegedly unconstitutional searches or in the decision to conduct those searches.

### VIII. *Assault and Battery*

■ Count Four, alleging assault and battery, involves the same events as the unconstitutional search allegations. In light of the Court's decision to go to trial on some plaintiffs' claims of unconstitutional searches, the Court finds it appropriate to proceed to trial on this count to the same extent as it is moving forward on Count Two. Defendants assert that they are entitled to public official immunity on the pendant state claim for assault and battery, regardless of whether plaintiffs' claims in Count Two go forward. The Court disagrees.

■ In Maryland, public official immunity can be established by showing that "(1) the individual actor, whose alleged negligent conduct is at issue, is a public official rather than a mere government employee or agent; and (2) his tortious conduct occurred while he was performing discretionary, as opposed to ministerial, acts in furtherance of his official duties." *James v. Prince George's County,* 288 Md. 315, 323, 418 A.2d 1173 (1980). Upon establishing these elements, "a qualified immunity attaches; namely, in the absence of malice, the individual involved is free from liability." *Id.* at 323–24, 418 A.2d 1173.

■ It is also well settled under Maryland law that "[p]ublic official immunity is not a defense to … intentional torts." *Ashton v. Brown,* 339 Md. 70, 117, 660 A.2d 470 (1995); *Parker v. State,* 337 Md. 271, 285, 653 A.2d 436 (1995) ("[T]his Court has never sustained the defense of public official immunity to an intentional tort action. . . ."); *Cox v. Prince George's County,* 296 Md. 162, 169,

460 A.2d 1038 (1983) ("[A] police officer does not enjoy this immunity if he commits an intentional tort or acts with malice."). These Maryland cases establish that defendants in this case are not entitled to public official immunity regarding the assault and battery allegations in Count Four.

### IX. *Right to Privacy*

In Count Six, plaintiffs claim that defendants violated their constitutional right to privacy by permitting the news media to videotape and photograph them, thereby causing their likenesses to be published openly to the general public. However, Supreme Court case law illustrates that claims for injury to reputation do not rise to the level of constitutional torts and are not compensable under 42 U.S.C. § 1983.

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), plaintiff brought a § 1983 action against police officials who had circulated to merchants a flier in which plaintiff was identified as a shoplifter. Plaintiff asserted that "[i]mputing criminal behavior to an individual is generally considered defamatory *per se,* and actionable without proof of special damages." *Id.* at 697, 96 S.Ct. at 1159. The Court rejected this contention, holding that "the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.* at 712, 96 S.Ct. at 1166. The Court also rejected plaintiff's contention that the defendants violated his right to privacy, stating that there is no "constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge." *Id.* at 713, 96 S.Ct. at 1166.

The Supreme Court reaffirmed this view in *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). There, the plaintiff brought an action against his former government supervisor who had allegedly written a defamatory letter. *Id.* at 229, 111 S.Ct. at 1791–92. Finding that "injury

caused by the defendant to a plaintiff's reputation ... is not recoverable in a [civil rights] action[,]" *id.* at 234, 111 S.Ct. at 1794, the Court held that the supervisor was entitled to qualified immunity because his actions did not violate any clearly established law. *Id.* at 234–35, 111 S.Ct. at 1794–1795. In responding to plaintiff's allegation that defendant acted with malice in defaming him, the Court added: "Our decision in *Paul v. Davis* did not turn ... on the state of mind of the defendant, but on the lack of any constitutional protection for the interest in reputation." *Id.* at 234, 111 S.Ct. at 1794.

These cases are dispositive of Count Six in the instant action. According to plaintiffs' Complaint, defendants made it appear that plaintiffs had "been engaging in criminal conduct," and "plac[ed] plaintiffs in a false light as to their presence upon the premises." This conduct, even if true, is no different from the alleged actions of the defendants in *Paul* and *Siegert,* and does not, therefore, amount to a constitutional violation. Indeed, plaintiffs' counsel appeared to concede this point at oral argument. Accordingly, all defendants are entitled to qualified immunity with respect to Count Six. *See also Wildauer v. Frederick County,* 993 F.2d 369, 373 (4th Cir.1993) (stating that " § 1983 cannot be used as a vehicle for asserting a claim of defamation").

### X.

For all of the foregoing reasons, the Court (1) will grant in part and deny in part the motion for summary judgment filed on behalf of the Sheriff's Office defendants; (2) will grant in part and deny in part the motion for summary judgment filed on behalf of the State's Attorney defendants; and (3) will deny plaintiffs' motion for partial summary judgment.[10] A formal Order will be entered in conformity with this Memorandum Opinion.

---

**10.** Plaintiffs' motion appears to address many of the same issues as defendants' motions which have been discussed at length in this opinion. As to those claims where summary judgment has been granted to defendants, denial of plaintiffs' motion speaks for itself. As to those claims where summary judgment has been denied, the Court has found disputes of material fact preventing summary judgment for any party.

## ORDER

In accordance with the Memorandum Opinion filed today in the above-captioned case, IT IS, this day of July, 1997, by the United States District Court for the District of Maryland,

ORDERED:

(1) That the Sheriff's Office defendants' Motion for Summary Judgment (Paper 44) BE, and the same hereby IS, GRANTED IN PART AND DENIED IN PART, as follows:

   (a) As to Counts Three and Six, that the motion BE, and the same hereby IS, GRANTED;

   (b) As to Counts One and Five:

   (i) That the motion BE, and the same hereby IS, DENIED with respect to plaintiff bookstores' claims against defendant Taylor; and

   (ii) That the motion BE, and the same hereby IS, GRANTED in all other respects;

   (c) As to Counts Two and Four:

   (i) That the motion BE, and the same hereby IS, DENIED with respect to the claims of plaintiffs LaVodie, Cage, Koenig, and Palmer against defendants Taylor, Golding, Mitchell, Barlow, and Sherron; and

   (ii) That the motion BE, and the same hereby IS, GRANTED in all other respects;

(2) That the State's Attorney defendants' Motion for Summary Judgment (Paper 46) BE, and the same hereby IS, GRANTED IN PART AND DENIED IN PART, as follows:

   (a) As to Counts Two, Three, Four, and Six, that the motion BE, and the same hereby IS, GRANTED;

   (b) As to Count One:

   (i) That the motion BE, and the same hereby IS, DENIED with respect to plaintiff bookstores' claims against defendant Cassilly; and

   (ii) That the motion BE, and the same hereby IS, GRANTED in all other respects;

   (c) As to Count Five:

   (i) That the motion BE, and the same hereby IS, DENIED with respect to plaintiff bookstores' claims against defendants Cassilly and Garland; and

   (ii) That the motion BE, and the same hereby IS, GRANTED in all other respects;

(3) That Plaintiffs' Motion for Partial Summary Judgment (Paper 45) BE, and the same hereby IS, DENIED;

(4) That JUDGMENT BE, and the same hereby IS, ENTERED in favor of defendants Mele, Bane, Stonesifer, Harkins, Hopkins, Keck, and Way, and against plaintiffs U.S. Books, Edgewood Books, McGinnis, Fulton, LaVodie, Cage, Koenig, and Palmer;

(5) That the remaining claims pending in the case are as follows:

   (a) Claims of plaintiff bookstores in Count One against Taylor and Cassilly;

   (b) Claim of plaintiffs LaVodie, Cage, Koenig and Palmer in Counts Two and Four against defendants Taylor, Golding, Mitchell, Barlow, and Sherron;

   (c) Claims of plaintiff bookstores in Count Five against defendants Taylor, Cassilly, and Garland; and

(6) That the Clerk shall mail a copy of this Order and the accompanying Opinion forthwith to counsel of record.